PER CURIAM.
11 This case arises from an insurance claim filed by Instant Reply Inc., and Charles Orzehoskie (respondents herein) against Allstate Insurance Company (Allstate) for Hurricane Katrina-related business and property damage. On September 10th and 11th, 2009, the parties attended a two day mediation, after which, the parties reached an agreement to settle respondents’ claims against Allstate and memorialized certain terms of the settlement in writing.[1]
On September 24, 2009, Allstate sent respondents’ counsel a draft Receipt and Release Agreement indicating that, in addition to the cheek for personal injuries to [2Mr. Orzehoskie, Allstate would issue three checks jointly payable to the United States Small Business Administration (SBA) and Instant Replay in the amounts of $311,000.00, $245,000.00, and $444,000.00, respectively. Allstate prepared four settlement checks-three to Instant Replay and one to Orzehoskie, which included the SBA as an additional payee on each of the checks. However, respondents rejected the checks and requested Allstate issue new checks omitting SBA as a payee, and forward the revised checks to them overnight.
One the same day, Allstate received a letter from the SBA informing that “payment of ... $75,900 fully satisfies any liens the SBA may have against Allstate ... for any proceeds paid to Instant Replay out of the million dollar assignment proceeds.” *421 On October 9, 2009, Allstate prepared six checks-one made payable to the SBA and Instant Replay jointly in the amount of $75,900, four made payable to Instant Replay, and one made payable to Mr. Orzeho-skie, and removed the SBA as a payee on the checks made payable to Instant Replay and Mr. Orzehoskie. On October 12, 2009, Allstate’s counsel transmitted a copy of the face of the checks via email and notified respondents’ counsel that the checks were ready for delivery. However, Mr. Orzeho-skie expressed concern regarding the manner in which the settlement check was made payable for his personal injuries and the possible tax consequences arising therefrom.[2]
On October 13, 2009, respondents filed a “Motion for Summary Hearing and to Enforce Settlement Agreement and For Damages and Penalties.” Therein, respondents sought an award of damages and penalties pursuant to LSA-R.S. 22:1973 “for the defendants[’] failure to pay the settlement within thirty days. At the hearing on the motion to enforce the settlement agreement, held on October 28, 2009, the trial |3court instructed Allstate to delete the reference to “loss of income” and to name Mr. Orzehoskie as the claimant on the check. Allstate then reissued Mr. Orzehoskie’s check and indicated thereon that the check was “in payment of damages due to personal injury,” and forwarded it to respondents on October 29, 2009. Respondents rejected the check related to Mr. Orzehoskie’s personal injury claims because Mr. Orzehoskie was not listed as a “claimant" on the check. Allstate subsequently issued a new check with Mr. Orzehoskie listed as the “claimant” on November 2, 2009, and delivered it to Mr. Orzehoskie’s counsel on November 3, 2009. On November 13, 2009, the parties executed a Mutual Confidential Receipt, Release and Settlement Agreement.
On July 12, 2010, respondents filed a motion for partial summary judgment and for declaratory judgment against Allstate, asserting that Allstate failed to pay the settlement within thirty days and was responsible for penalties pursuant to LSA-R.S. 22:1973. Respondents also sought a declaratory judgment regarding the manner of calculating the penalty under LSA-R.S. 22:1973 C. On July 15, 2010, Allstate, asserting that it paid the settlement sums in accordance with LSA-R.S. 22:1973, and filed a motion for summary judgment seeking dismissal of respondents’ claims.
The trial court granted Allstate’s motion for summary judgment, and denied respondents’ motions for partial summary judgment and declaratory judgment on November 16, 2010. On November 24, 2010, respondents filed a motion for new trial, which the trial court denied on February 8, 2011.
The Court of Appeal reversed the judgment of the trial court, reasoning that Allstate, after being notified of the amount of the SBA lien within the 30-day deadline, issued new checks on October 9, 2009 and removed the SBA as a payee; however, the checks were not forwarded to respondents until October 28 and 29, 2009 and as a matter of law that Allstate violated LSA-R.S. 22:1973 B(2) because the | ^payments were not made in accordance with the terms of the settlement agreement within 30 days. The Court of Appeal pretermitted the issue of setting the penalty pursuant to LSA-R.S. 22:1973 C, noting that such is within the province of the trial court and that the record does not contain *422 the sufficient facts from which to make that determination in accordance with Oubre v. Louisiana Citizens Fair Plan, 11-0097 (La.12/16/11), 79 So.3d 987. Judge Welch dissented and assigned reasons.
LAW AND DISCUSSION
The September 11, 2009 mediation agreement indicated that Allstate was to make payments to Instant Replay Sports and Mr. Orzehoskie within 30 days after the date of the mediation agreements as per La. R.S. 22:1973 B(2). Allstate tendered payment on October 8, 2011, which the respondents rejected. The mediation agreement provided the amounts the defendants would pay, the provision for the respondents to make payments to the SBA, and required that the parties “draft a settlement and release agreement to be signed by all parties.” Revisions of this settlement and release agreement drawn up by Allstate on September 24, 2009 and October 6, 2009, both of which were sent to respondents, include that Allstate would “within fourteen (14) days after execution of this Agreement by all Parties, tender three checks jointly payable to Instant Replay Sports, Inc., the SBA and the Law Offices of Edward Sherman” the amounts agreed upon, illustrating Allstate’s good faith understanding and performance of the execution of the checks.
Subsequent to Allstate’s initial tender of checks, and in order to accommodate respondents, respondent made several revisions to the checks. The settlement checks that were ultimately accepted by the respondents were not written as originally designated in the mediation agreement. Rather, a total of six checks were issued instead of four, as specified in the mediation agreement, and an additional payee, consisting of respondents’ counsel, was added, though he was not originally | ^identified as payee in the mediation agreement. Respondents also requested the word “claimant” be added to Mr. Orze-hoskie’s check although this was not required in the mediation agreement. The record shows that the agreed upon terms were altered at the respondents’ request, after the agreement of September 11, 2009, and Allstate acted in a good faith manner in reissuing the checks. Nolan v. Audubon Ins. Group, 10-1362 (La.App. 3 Cir. 3/9/11), 59 So.3d 487.
Louisiana Revised Statutes 22:1973(A) imposes a duty of good faith and fair dealing on insurers and La. R.S. 22:1973 B(2) allows the imposition of penalties only if an insurer “knowingly commitfs] or perform[s]” a failure to pay a settlement within 30 days after the agreement is reduced to writing. Under the facts presented in this case, we find that Allstate did not knowingly fail to make payment within 30 days of the agreement.
DECREE
The judgment of the Court of Appeal is reversed. The judgment of the district court is reinstated.

. The agreement provided in pertinent part:
The defendant(s) will pay the full amount of $2 million dollars ... to the plaintifffs). Said payment will be made within 30 days from today. It is understood and agreed that, except as provided below, all liens or interventions for medical expenses, compensation payments or otherwise will be paid and satisfied by the plaintiff(s), including but not limited to all requirements under the law to satisfy the lien or rights of the [SBA],
The parties will draft a settlement and release agreement to be signed by all parties. Payments will be made in the following manner:
1) Check to Instant Replay for $311,000 for contents due to wind
2) Check to Instant Replay for $245,000 for loss of income
3) [Check] to Instant Replay for $444,000 for contents due to looting
4) Check to Charles Orzehoskie for [$1,000,000] for damages due to personal injuries

. There was a reference made to the payment for damages for "loss of income” printed on the check made payable to Mr. Orzehoskie.